**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 25-10795

Non-Argument Calendar

————————————

DAVID WINDOM,

*Plaintiff-Appellant,*

*versus*

ORANGE COUNTY,

*Defendant-Appellee.*

————————————

Appeal from the United States District Court
for the Middle District of Florida
D.C. Docket No. 6:23-cv-00761-JA-UAM

————————————

Before ROSENBAUM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

David Windom, formerly incarcerated at Orange County Jail ("OCJ"), sued Orange County, Florida (the "County" or "Orange County") for deliberate indifference to his serious medical

needs in violation of the Eighth[1] and Fourteenth Amendments. The District Court granted summary judgment in favor of the County, holding that Windom failed to show a persistent and widespread practice of deliberate indifference ongoing at the time of his treatment. Reviewing de novo, we find that the District Court correctly granted summary judgment in favor of the County. Therefore, we affirm.

## I. BACKGROUND AND PROCEDURAL HISTORY

Windom was incarcerated at OCJ from early 2018 to May 2019. Upon entering OCJ, Windom had no conditions impairing his vision. During his time in OCJ custody, Windom began experiencing a burning sensation, redness, and blurriness in his right eye.

Windom was seen by OCJ medical staff several times for his eye condition. Medical staff gave Windom over-the-counter eye drops, but the drops seemed to aggravate his condition. He requested to be seen by an outside vision specialist several times over

---

[1] The record does not indicate whether the claim alleged by Windom occurred while serving a sentence pursuant to a conviction in a court of law, or whether he was merely being held in pretrial detention. This is relevant to us because the Eighth Amendment only applies to conduct that occurs while the plaintiff was confined "subsequent and as a consequence of" his lawful conviction of a crime. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1572 (11th Cir. 1985). However, despite this gap in the record, we may proceed with our analysis because this circuit applies the same standard regarding medical care—that is, deliberate indifference—regardless of whether the claim arises under the Eighth Amendment for convicted persons, or under the Fourteenth Amendment for pretrial detainees. *Id.* at 1574.

the course of a few months—but each request was denied. Eventually, OCJ permitted Windom to see an outside specialist and sent him to Bird Institute/Garay Eye Care and Surgery Center (the "Eye Center").

On February 25, 2019, Dr. Cynthia Franco first examined Windom at the Eye Center. Dr. Franco diagnosed Windom with uveitis[2] and prescribed him Prednisolone Acetate 1% ("Prednisolone") drops to be taken every two hours when awake.

Windom saw Dr. Franco a second time on March 13, 2019. During the visit, Windom claimed that OCJ failed to provide the prescribed Prednisolone drops, which is why he was not able to take them. Dr. Franco prescribed Windom Timolol .5% for his elevated eye pressure and continued his prescription for Prednisolone.

The next time Windom saw Dr. Franco was approximately a month later, on April 18, 2019. Windom told Dr. Franco that he had still not received the eye drops from OCJ, during which time his vision became worse. Dr. Franco saw that the Prednisolone was not on Windom's list of medications and contacted OCJ's Medical Director to ensure that he received it going forward.

---

[2] Uveitis is a condition where the front part of the eye is inflamed. Uveitis has multiple possible causes, such as: trauma, inflammation in the body, herpes, syphilis, rheumatoid arthritis, lupus, or the presence of cells in the anterior chamber.

On May 3, 2019, Windom visited the Eye Center again, but this time was examined by Dr. Bird. Dr. Bird noted that Windom's vision had improved and prescribed Valacyclovir to treat suspected herpes in his eyes.

On August 27, 2020—more than two years after Windom was released from OCJ—Windom returned to the Eye Center for a disability eye examination. Windom had no light perception or vision in his right eye. Dr. Franco concluded that Windom's vision problems were caused by corneal scarring, which is usually not caused by untreated uveitis.

On May 13, 2021, Dr. Leslie Garay examined Windom at the Eye Center and, like Dr. Franco, noted neovascularization corneal scarring. She prescribed Windom Pred Forte 1% and directed him to have an eye scan.

On June 1, 2021, Windom had his final examination at the Eye Center—a follow-up appointment with Dr. Garay. Dr. Franco testified that, based on the record from that appointment, Windom's vision in his right eye could not be restored. Dr. Franco also testified that she did not know whether Windom's treatment at OCJ had anything to do with his vision loss nor did she recall ever telling Windom anything to that effect.

Windom brought a 42 U.S.C. § 1983 action against Orange County for deliberate indifference to his serious medical needs while incarcerated at OCJ, in violation of the Eighth and Fourteenth Amendments. He alleged that OCJ "ha[d] internal policies

25-10795                    Opinion of the Court                    5

and procedures that dissuade their medical staff from referring matters to outside medical providers" and that these "policies and practices are aimed at saving [OCJ] money."

Orange County moved for summary judgment. First, the County argued that Windom failed to prove that OCJ has internal policies or procedures that discourage OCJ medical staff from referring inmates to outside providers to save money. Second, the County argued that Windom failed to establish that his treatment at OCJ, or their delay in referring him to an outside provider, caused or worsened his eye condition.

The District Court granted the County's Motion for Summary Judgment. The Court held that Windom relied exclusively on his own experience in the prison, which is insufficient to show a persistent and widespread practice of unconstitutional deliberate indifference. In the alternative, the District Court held that Windom failed to present evidence that his vision loss was caused by OCJ's alleged wrongful conduct.

Now on appeal, Windom raises two issues. First, Windom argues that the District Court failed to view the evidence in the light most favorable to the nonmoving party in its grant of summary judgment in favor of the County. And second, Windom argues that there was sufficient evidence in the record to establish that Orange County was deliberately indifferent to his serious medical needs.

## II. STANDARD OF REVIEW

We review de novo the district court's grant of summary judgment, viewing the evidence and drawing all reasonable inferences in the light most favorable to the nonmoving party. *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1291–92 (11th Cir. 2012).

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Ismael v. Roundtree*, 161 F.4th 752, 758 (11th Cir. 2025) (citation omitted). All reasonable inferences must be made in favor of the nonmoving party, but "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

## III. LIGHT MOST FAVORABLE TO THE NONMOVING PARTY

First, Windom argues that the District Court erred by failing to view the evidence in the light most favorable to the nonmoving party. Windom is correct that, on a motion for summary judgment, district courts must view the evidence in the light most favorable to the nonmoving party. *See UPS Ground Freight*, 683 F.3d at 1291–92. However, Windom failed to develop this argument in his initial brief. The only explanation he provides in support of his argument is that "[t]he Court appears to have resolved every inference in favor of the moving party." He provides no examples from

the record or the order granting Orange County's Motion for Summary Judgment of instances where the District Court erred by making an inference in favor of the moving party. The appellant's brief must contain his "contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies." Fed. R. App. P. 28(a)(8)(A). Therefore, an appellant abandons an issue when he merely states that it exists without further argument or discussion. *Singh v. U.S. Atty. Gen.*, 561 F.3d 1275, 1278 (11th Cir. 2009). Accordingly, we need not discuss this issue.

## IV. GENUINE DISPUTE OF MATERIAL FACT

Deliberate indifference to the serious medical needs of prisoners can constitute a violation of the Eighth Amendment's prohibition on cruel and unusual punishments. *Estelle v. Gamble*, 429 U.S. 97, 104, 97 S. Ct. 285, 209 (1976). In order to make a showing of deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry. *Valderrama v. Rousseau*, 780 F.3d 1108, 1116 (11th Cir. 2015). The objective inquiry asks whether there existed "an objectively serious medical need." *Ibid.* The subjective inquiry asks whether the government official was "deliberatively indifferent to that need." *Ireland v. Prummell*, 53 F.4th 1274, 1287 (11th Cir. 2022) (citation modified). We have previously held that the subjective inquiry consists of four elements: (1) the official was aware of facts that would allow him to draw an inference that a substantial risk of harm exists, (2) the official actually drew that inference, (3) the official disregarded the risk of serious harm, *ibid.*, and (4) the official acted with "subjective

recklessness as used in the criminal law." *Wade v. McDade*, 106 F.4th 1251, 1255 (11th Cir. 2024) (en banc). The fact that medical care was eventually provided is not enough to defeat a claim for deliberate indifference. *Ireland*, 53 F.4th at 1288. The applicable court must consider the reason for the delay and the nature of the medical need when determining whether the delay is constitutional. *Ibid.*

Since liability under § 1983 cannot be based on the theory of respondeat superior, as an initial matter, Windom must prove that Orange County had a "'policy or custom' of deliberate indifference that led to the violation of his constitutional right." *Craig v. Floyd Cnty.*, 643 F.3d 1306, 1310 (11th Cir. 2011) (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694, 98 S. Ct. 2018, 2037 (1978)). Municipalities rarely have official policies that endorse constitutional violations. Thus, plaintiffs usually must show that the municipality had a "custom or practice" of permitting constitutional violations. *Ibid.* A custom is a practice that is "so settled and permanent that it takes on the force of law." *Ireland*, 53 F.4th at 1289 (quoting *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997)). A single incident is insufficient proof of an unconstitutional policy or custom, unless the challenged policy is itself unconstitutional. *Ibid.* Plaintiffs must show a "persistent and wide-spread practice" to demonstrate a policy or custom. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007).

Therefore, in order to survive the County's Motion for Summary Judgment, Windom needed to produce evidence sufficient to

create genuine disputes of material facts for all three of the following elements of liability under § 1983: (1) that Windom's constitutional rights were violated; (2) that OCJ had a policy or custom that constituted deliberate indifference to that constitutional right; and (3) that this policy or custom caused the constitutional violation. *See Ireland*, 53 F.4th at 1290–91.

At the outset, we note that Windom's claim of deliberate indifference to his serious medical needs is solely predicated on OCJ's failure to timely refer him to an outside vision expert—not on OCJ's failure to provide his eye drops. In Windom's initial complaint, his only claim was that OCJ had internal policies that dissuaded their medical staff from referring matters to outside medical providers. Plaintiffs may not raise new claims at the summary judgment stage, *Poer v. Jefferson Cnty. Comm'n*, 100 F.4th 1325, 1337–38 (11th Cir. 2024), nor may plaintiffs raise new arguments on appeal, *Access Now, Inc. v. Sw. Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004).

We agree with the District Court that Windom failed to provide sufficient evidence that OCJ had a policy or custom that led to a violation of his constitutional right. In his initial complaint, Windom asserted that OCJ has internal policies and procedures that dissuade their medical staff from referring matters to outside medical providers to save money. In his response to Orange County's Motion for Summary Judgment, Windom provided two pieces of evidence to prove that the County has a custom or policy of deliberate indifference: (1) his own attempts to seek outside medical help and

(2) two previous legal actions brought against OCJ by other plaintiffs.

Windom's proffered evidence is insufficient to show a policy or custom. One's own experience can be evidence of a policy or custom, but it is not enough by itself. *See Myrick v. Fulton Cnty.*, 69 F.4th 1277, 1299 (11th Cir. 2023) ("A single incident of a constitutional violation is insufficient to prove a policy or custom . . . ." (citation modified)). Additionally, the two legal actions brought against OCJ are not analogous to Windom's claim that OCJ has a policy—official or unofficial—of dissuading their medical staff from referring matters to outside medical providers. The plaintiff in the first cited legal action against OCJ, *Muszinski v. Orange County*, alleged that OCJ had a policy of refusing to provide methadone to inmates who required it. Case No. 6:03-cv-655-G_S-KRS, Doc. 1 at 12. Likewise, in the second cited legal action against OCJ, *Bryant v. Orange County*, the plaintiff alleged that OCJ had a policy of "allowing documentation to be minimized to twice a week unless there was a change in the patient's medical condition." Case No. 6:17-cv-1423-GAP-LPH, Doc. 47 at 26. The policies alleged in these two actions are not sufficiently like the policy alleged by Windom and to be relevant as evidence of a policy or custom.

Because Windom failed to show a persistent and widespread practice demonstrating a policy or custom of deliberate indifference, his § 1983 claim against Orange County fails. Therefore, the District Court did not err by granting the County's Motion for Summary Judgment.

## V. CONCLUSION

For the foregoing reasons, the District Court's Order granting Orange County's Motion for Summary Judgment is **AFFIRMED.**